No. 24-60446

# In the United States Court of Appeals for the Fifth Circuit

MAURINE MOLAK;
MATTHEW MOLAK,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

*Respondents*.

Petition for Review of an Order
of the Federal Communications Commission
FCC 24-76; WC Docket No. 21-31

**RESPONSE TO MOTION TO DISMISS**

Yaakov M. Roth
yroth@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

David K. Suska
dsuska@jonesday.com
JONES DAY
150 W. Jefferson Ave.
Suite 2100
Detroit, MI 48226
Telephone: (313) 733-3939

***Counsel for Petitioners***

# CERTIFICATE OF INTERESTED PERSONS

No. 24-60446, *Molak et al. v. FCC et al.*

The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Petitioners:
1. Maurine Molak
2. Matthew Molak

Petitioners' Counsel:
1. Jones Day
2. Jacob (Yaakov) M. Roth
3. David K. Suska

Respondents:
1. Federal Communications Commission
2. United States of America

Respondents' Counsel:
1. Jacob M. Lewis
2. Rachel Proctor May
3. Robert B. Nicholson
4. Robert J. Wiggers

s/ *Jacob Moshe Roth*
*Counsel for Petitioners*

# INTRODUCTION

Maurine and Matthew Molak ("Petitioners") oppose the FCC's unprecedented and unauthorized expansion of E-Rate, and seek to undo the agency's recent order that would effectively turn school-aged children into walking and talking Wi-Fi hotspots. Petitioners have asked the FCC to reconsider that order and also have invoked this Court's jurisdiction under statutes that clearly vest the Court with authority to review the order. The FCC, of course, would prefer not to have this Court examine the legality of its decision. The agency seeks dismissal of this lawsuit, pointing to (largely out-of-circuit) precedent that subverts the plain text of those statutes in favor of concerns about efficiency. This Court should reject the FCC's transparent attempt to evade review; concerns about efficiency cannot trump jurisdictional rules, and dismissal at this stage is not the efficient course anyway. This Court should thus deny the motion to dismiss, or at least carry the motion with the case and hold the case in abeyance pending the FCC's timely resolution of the petition for reconsideration.

# BACKGROUND

This case involves the FCC's universal service program known as E-Rate. That program subsidizes "telecommunications, Internet access, and internal connections [for] eligible schools and libraries." FCC, E-Rate: Universal Service Program for Schools and Libraries, https://www.fcc.gov/consumers/guides/universal-service-program-schools-and-libraries-e-rate. The subsidies are funded through fees imposed on "[e]very telecommunications carrier that provides interstate telecommunications

1

services." 47 U.S.C. § 254(d). Importantly, however, carriers do not bear the expense of their contributions. Instead, they "almost always" pass through these costs to their customers who subscribe to their phone plans. *Vt. Pub. Serv. Bd. v. FCC*, 661 F.3d 54, 57 (D.C. Cir. 2011). Indeed, FCC regulations authorize carriers to "recover [their] federal universal service contribution costs" through "charges to end users" in the form of a "line item on a customer's bill." 47 C.F.R. § 54.712(a).

Statutory authority for E-Rate comes from 47 U.S.C. § 254(b) and 254(h). The former provision codifies a general principle: "Elementary and secondary schools and classrooms … and libraries should have access to advanced telecommunications services." *Id.* § 254(b)(6). The latter provision effectuates that principle, by directing the FCC to establish rules "to enhance … access to advanced telecommunications and information services for all public and nonprofit elementary and secondary school classrooms … and libraries." *Id.* § 254(h)(2)(A).

In October 2023, the FCC took E-Rate in a new direction. In a 3–2 decision, the FCC expanded E-Rate to subsidize the provision of Wi-Fi not in *classrooms* or *libraries*, but on *school buses*. Declaratory Ruling, *In the Matter of Modernizing the E-Rate Program for Schools and Libraries*, FCC 23-84, WC Docket No. 23-184 ("School Bus Ruling"). The FCC did so through a so-called declaratory ruling, a type of order that does not entail notice-and-comment procedures. *See* 47 C.F.R. § 1.2(a).

The FCC acknowledged that the School Bus Ruling breaks from past practice. As it explained, "[t]he E-Rate program does not provide support for most off-campus

2

services." School Bus Ruling ¶ 4. But the agency forged ahead anyway, reasoning that Wi-Fi on school buses serves "an educational purpose," and that expansion of E-Rate is an important substitute for the Emergency Connectivity Fund, a COVID-era program that expressly permitted off-campus support but that had a statutory expiration date of June 30, 2024. *Id.* ¶¶ 2, 7–8, 11–13. Chairwoman Rosenworcel added that the novel expansion of E-Rate was necessary to "meet the moment." *Id.* at 10.

Commissioners Carr and Simington dissented. *Id.* at 12–13, 15. Both expressed grave doubts about the legality of the School Bus Ruling. Section 254 speaks of support for "classrooms" and "libraries," they noted, and a school bus is none of those things. *Id.* at 12–13, 15. Commissioner Simington also voiced skepticism about the educational benefits of the decision, suggesting that few children "will sit quietly and do homework" on the bus "instead of socializing with their friends … and browsing social media." *Id.* at 15. "[T]he federal government should not be complicit in giving children harmful access to social media without parental supervision." *Id.*

In December 2023, Petitioners filed a lawsuit in this Court challenging the School Bus Ruling as contrary to law. *Molak v. FCC*, No. 23-60641. The Molaks explained that they are aggrieved by the School Bus Ruling because it will increase the outlays of the E-Rate Program and therefore the amount of Federal Universal Service Charge line-item they pay each month as part of their phone bill. As they also explained, their interest in the matter goes beyond their pocketbook. In 2016, their son David tragically took his own life at the age of 16. In the months before his death, David had become

3

overtaken with grief due to harassment and threats received through text messages and social media. Soon after losing David, his family started David's Legacy Foundation, dedicated to eliminating bullying (including cyberbullying) through education, legislation, and legal action. The Molaks believe that the School Bus Ruling undermines that critical mission by enabling unsupervised social-media access by children and teenagers. *Id.*, ECF 1-1, at 1–2.

The FCC moved to dismiss the Molaks' challenge to the School Bus Ruling, arguing that this Court lacked jurisdiction because the Molaks had neither participated in the agency proceedings that resulted in the Ruling nor petitioned the FCC to reconsider the Ruling. *Id.*, ECF 33 (Feb. 6, 2024). The Molaks objected that these were not jurisdictional flaws and that they could not meaningfully participate in the formulation of an order that did not go through notice and comment. *Id.*, ECF 41 (Feb. 9, 2024). This Court carried the motion to dismiss with the case. *Id.*, ECF 59-2 (Feb. 22, 2024). The parties then completed merits briefing, and this Court has tentatively scheduled oral argument for the week of November 4, 2024. *Id.*, ECF 121.

As it turned out, the School Bus Ruling was just the start of an unprecedented expansion of E-Rate. Last month, the FCC published a new order making E-Rate subsidies available for Wi-Fi service and equipment *anywhere* students might go. In other words, the FCC proposed to equip students with Wi-Fi hotspots not just on buses traveling to and from school, but in malls, coffee shops—you name it. *See* Addressing the Homework Gap through the E-Rate Program, 89 Fed. Reg. 67,303 (Aug. 20, 2024)

4

("Hotspots Ruling"). The potential economic and social costs of this Hotspots Ruling are staggering. In a sense, it would turn each student into a Wi-Fi hotspot.

The Molaks object to the Hotspots Ruling for the reasons they object to the School Bus Ruling—it is unlawful, wasteful, and harmful to children and teenagers. It also plainly exceeds the FCC's statutory authority to enhance connectivity for "classrooms." They thus filed this lawsuit challenging the Hotspots Ruling as contrary to law. ECF 1-1. But before doing so, they petitioned the FCC to reconsider the Ruling, knowing well that such a request was likely futile, but anticipating that the FCC would again insist on that step as a precondition to judicial review. ECF 17-2.

What happened next is Kafka-esqe: The FCC moved to dismiss the Molaks' latest suit, this time arguing that by asking the agency to reconsider the Hotspots Ruling, the Molaks had turned the final, reviewable order into a nonfinal, unreviewable order. ECF. 17-1. In other words, the petition for reconsideration that the FCC said was a jurisdictional *prerequisite* to review of the School Bus Ruling was now somehow a jurisdictional *barrier* to review of the Hotspots Ruling. According to the FCC, the Molaks must wait for the agency to rule on their request for reconsideration before filing a fresh petition for review in this Court—and the agency can give no sense of how long that might take, or whether it will ever act on the reconsideration request at all. In the meantime, the FCC is presumably starting to implement the Hotspots Ruling on schedule, unbothered by the Molaks' objection and unburdened by the express statutory limits on its authority.

## ARGUMENT

This Court should see the FCC's motion to dismiss for what it is: yet another attempt to evade judicial review of an unlawful expansion of E-Rate. As such, the Court should deny the motion, or at least carry it with the case and hold the case in abeyance pending a timely resolution of the petition for reconsideration of the Hotspots Ruling.

There should be no doubt that this Court has jurisdiction to review the Hotspots Ruling. Congress controls the jurisdiction of the lower federal courts, *see* U.S. Const., art. I, § 8, cl. 9; *id.*, art. III, § 1; *Sheldon v. Sill*, 8 How. 441, 449 (1850); and Congress has vested this Court with jurisdiction to review FCC orders like the Hotspots Ruling, 47 U.S.C. § 402(a). All that the law requires to invoke that jurisdiction is a petition for review filed within 60 days of the agency's publication of the order in the Federal Register. 28 U.S.C. § 2344; *see also* 47 C.F.R. § 1.4(b)(2). There is no dispute that the Molaks met this requirement, filing their petition for review on August 29—barely a week after publication of the Ruling in the Federal Register. ECF 1-2.

Nothing in the statute books even hints at the possibility that a petition for reconsideration deprives the circuit courts of jurisdiction over cases like this one or converts final, reviewable orders into nonfinal, unreviewable orders. On the contrary, the provision governing petitions for reconsideration, 47 U.S.C. § 405(a), says that such a petition has *no effect* on the underlying order unless and until the Commission acts. ("No such application shall excuse any person from complying with or obeying any order, decision, report, or action of the Commission, or operate in any manner to stay

6

or postpone the enforcement thereof, without the special order of the Commission."). It further provides that "[t]he time within which a petition for [judicial] review must be filed … shall be computed from the date upon which the Commission gives public notice of the order, decision, report, or action complained of"—in other words, it gives no indication that the time to petition for judicial review is tolled or deferred by the filing of a petition for reconsideration with the agency. The upshot is that a party who wishes to ask the agency to reconsider an order is free to do so *and* seek judicial review of the order—for better or worse, that is the scheme Congress established.

The FCC does not engage with this statutory text. Instead, the agency invokes (mostly out-of-circuit) judicial precedent that ignore Congress's clear command for reasons of efficiency. *See* Mot. at 5 (quoting *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1490 (D.C. Cir. 1994), for the proposition that it is preferable to require an agency to rule on a petition for reconsideration before engaging in judicial review to avoid "wasting judicial resources").

The Molaks acknowledge this precedent (atextual though it is). But they disagree that dismissal is the proper course here. Instead, this Court should deny the motion to dismiss, or at least carry the motion with the case and hold the case in abeyance pending the FCC's timely consideration of the petition for reconsideration.[1]

---

[1] This Court commonly carries motions to dismiss with the case. *See, e.g.*, Order, *Molak v. FCC*, No. 23-60641 (Feb. 22, 2024); Order, *Texas v. NRC*, No. 21-60743 (Nov. 21, 2021); Order, *Amawi v. Paxton*, No. 21-50360 (July 26, 2021).

7

There are several reasons to prefer that course. For one, it would better comport with the applicable statutes (which, again, clearly vest this Court with jurisdiction) while still serving the interest of efficiency. For another, it would also prevent the FCC from later arguing that a future challenge to the Hotspots Ruling is untimely—which the agency undoubtedly would do if this Court were to dismiss the suit, the FCC were to delay ruling on the Molaks' petition for reconsideration for weeks or months, and the Molaks were eventually to sue again after the FCC denies reconsideration. Indeed, before deciding whether to oppose the FCC's motion to dismiss, counsel for the Molaks asked counsel for the agency whether the agency would agree not to contest timeliness in a hypothetical future lawsuit the Molaks might file, and counsel for the FCC declined to offer any assurances. Moreover, if the agency unreasonably delays in deciding on the petition for reconsideration—effectively denying it without ever having to say so—then this lawsuit could start up again, without the pointless step of a new case filing.

It is clear that the FCC will do whatever it can to evade review of its unlawful expansions of E-Rate. This Court should not let the agency get away with it.

## **CONCLUSION**

The Court should deny the motion to dismiss, or at least carry it with the case and hold the case in abeyance pending the FCC's timely resolution of the petition for reconsideration. The Court should further indicate that if the FCC does not rule on the petition for reconsideration in a reasonably timely fashion the Molaks may so inform the Court and the Court may consider whether it is appropriate to resume proceedings.

Dated: September 20, 2024                Respectfully submitted,

<u>s/ Jacob Moshe Roth</u>
Jacob (Yaakov) M. Roth
yroth@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

David K. Suska
dsuska@jonesday.com
JONES DAY
150 W. Jefferson Ave.
Suite 2100
Detroit, MI 48226
Telephone: (313) 733-3939

***Counsel for Petitioners***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2024, the foregoing response was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. I certify that all parties required to be served have been served.

Dated: September 20, 2024        Respectfully submitted,

                                            s/ *Jacob Moshe Roth*
                                            *Counsel for Petitioners*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because it contains 2,186 words, excluding exempted text.

2. This document complies with the type-face and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in proportionally spaced 14-point Garamond font using Microsoft Word 365.

s/ *Jacob Moshe Roth*
*Counsel for Petitioners*
